William L. DREW, Plaintiff–Appellant,

v.

State of ILLINOIS, DEPARTMENT OF HUMAN SERVICES, Defendant–Appellee.

No. 03–1540.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 2004.

Decided June 15, 2004.

James P. Baker, Springfield, IL, for Plaintiff–Appellant.

Mary E. Welsh, Office of the Attorney General, Chicago, IL, for Defendant–Appellee.

Before COFFEY, MANION, and KANNE, Circuit Judges.

## ORDER

William Drew sued his employer, the Illinois Department of Human Services (the "Department"), alleging that the Department discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e—2000e–17. The district court granted summary judgment to the Department, and we affirm.

Drew, a black man, alleged that his supervisors discriminated against him by assigning him extra work without granting him permission to work overtime. Drew's assignments increased in December 1998 and January 1999, and Drew asked his supervisor, Gary Heggy, for permission to work overtime. Heggy concluded that Drew's work schedule provided sufficient time for him to complete his tasks, and recommended denying Drew's request. Heggy's supervisor, Marcia Wherry, then did a time study, concluding that Drew would need no more than 80 hours each month to complete his assigned tasks. Since Drew had 134 hours each month to finish his work, Wherry denied Drew's overtime request.

Drew also alleged that he was assigned tasks that exceeded his job classification and that the Department discriminated against him by refusing to grant him a promotion. At all times relevant to this case, Drew's title was Statistical Research Specialist III (SRS III), a classification that did not include performing accounting duties. But in February 1999 Heggy temporarily assigned Drew tasks that previously had been prepared by an accountant who had resigned. Drew performed those tasks until the accounting position was filled in April 1999. While performing those tasks, Drew requested a promotion but was denied.

As further evidence of the Department's discrimination, Drew also points to obstruction he encountered when seeking permission to use his vacation time. He says that sometime in 1998 he submitted a timely vacation request in accordance with union regulations but never received a response.

Finally, Drew says that the Department's discrimination was apparent in its effort to isolate him from his co-workers. Unlike most employees, Drew did not belong to a "unit" within the Bureau, and as a result he was not invited to unit social functions, such as Christmas parties or employee birthday celebrations. Also, the Department assigned him to a cubicle that was separated from other employees, located between a room used for general storage and one used to hold microfiche tapes. Although his cubicle was across the hall from the file room, Drew says that file room clerks were instructed not to speak to him.

Drew filed this suit in June 2000, alleging that the Department discriminated against him by denying him overtime, refusing to promote him although he was assigned job responsibilities outside of his job classification, failing to approve his vacation request, placing his desk in an isolated location, and failing to include him in office social events. The district court granted the Department's motion for summary judgment. First, with regard to the isolated location of his cubicle and his exclusion from office social events, the court determined that Drew could not make a prima facie case of discrimination under the indirect burden-shifting approach, *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because neither circumstance constituted an adverse employment action. The district court acknowledged that Drew could show an adverse employment action by the Department's refusal to promote him and possibly also by the Department's refusal to approve his vacation request, but went on to conclude that Drew had not shown that any similarly situated white employees were treated more favorably. The court also determined that Drew made out a prima facie case that the Department discriminated against him by failing to approve his request to work overtime, but ultimately concluded that Drew did not prove that the Department's reason for the decision was pretextual.

On appeal Drew challenges the district court's grant of summary judgment to the Department, arguing that each alleged incidence of discrimination involved an adverse employment action and that for each he presented evidence of similarly situated employees who were treated more favorably. To succeed on his discrimination claims under *McDonnell Douglas*, Drew must prove a prima facie case of discrimination by showing that (1) he was a member of a protected class; (2) he was qualified for the position sought or met the employer's legitimate work expectations; (3) he was rejected for that position or the employer took adverse employment action against him; and (4) the employer treated similarly situated employees who were not members of the protected class more favorably. *Volovsek v. Wis. Dep't of Agric., Trade, and Consumer Prot.*, 344 F.3d 680, 692 (7th Cir.2003).

■ Drew has not made out a prima facie case of race discrimination on any of his claims. Drew points to the district court's assumption that he made out a prima facie claim with regard to the Department's denial of his request for over-

time, but the district court's assumption was incorrect. An adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit, such as a bonus, to which he is not automatically entitled, *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996), and Drew admits that overtime was purely discretionary under the relevant collective bargaining agreement. Further, Drew offered no evidence of employees who were similarly situated and treated more favorably. Drew argues that employees who worked as Quality Control Reviewers were comparable, but he presents no evidence showing that the overtime requests of specific QCRs were granted while his was not.

But even if Drew could make out a prima facie case on this claim, he has not met his burden of demonstrating that the Department's reason for denying his request was pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Volovsek*, 344 F.3d at 692. Drew has offered no evidence suggesting that his supervisors' reasons for declining his overtime request were lies. *See Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 (7th Cir.2003). Drew has not shown that Heggy did not actually rely on his own observations of Drew's working behavior or that Wherry did not believe her opinion that Drew did not need overtime work to complete his tasks. And a plaintiff cannot avoid summary judgment simply by claiming that a jury could disbelieve the reasons provided by an employer for making its employment decisions. *See Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir.2002) (upholding grant of summary judgment where plaintiff merely questioned the employer's credibility without showing any evidence of pretext).

■ Further, Drew has not made out a prima facie case that the Department discriminated against him with regard to promotions and vacation requests because he

has offered no evidence of similarly situated employees who were treated more favorably. To prove that a similarly situated employee was treated more favorably, an employee must offer evidence about a "comparable" employee, or someone who "is similarly situated with respect to performance, qualifications and conduct." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 546 (7th Cir.2002) (quoting *Radue v. Kimberly–Clark*, 219 F.3d 612, 618 (7th Cir.2000)). This comparison is normally proven by showing that the "two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Radue*, 219 F.3d at 618).

Although Drew named several employees who he alleged were similarly situated in support of his failure-to-promote claim, he did not explain how those employees were comparable. In his deposition Drew stated that colleagues Connie Virden, Tina Stewart, Karen Peters, Don Little, and Rick Machett were given job assignments consistent with their job classification, and in his motion for summary judgment Drew noted that Alexandar Jordan, who had a higher title, worked on a report later assigned to Drew. But Drew offered no evidence that those employees either had similar qualifications, conduct, and performance or were given assignments outside their job classifications and granted promotions to show that the named employees were comparable. Similarly Drew identified white employee Jan Merrick as an employee whose vacation request was granted, but did not explain how she was comparable. Though Drew notes that Merrick requested her vacation time "in the same manner" that he did, he has offered no other evidence—such as Merrick's job classification and seniority—to

show that he and Merrick were similarly situated.

■ Finally, Drew has not shown that he was subject to an adverse employment action as a result of the Department's decision to place his cubicle in an isolated location and to exclude him from office social events. An adverse employment action is "one that significantly alters the terms and conditions of the employee's job" and must involve more than a mere inconvenience or a change in job responsibilities. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir.2004). In *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027 (7th Cir.1998), we concluded that an employee who argued that she had been ignored and treated poorly by other employees had not suffered an adverse employment action because there was "no indication that this alleged shunning resulted in material harm." *Id.* at 1039. *See also Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 704 (7th Cir.2001) (working in an "unpleasant environment" did not involve a "material harm" sufficient to establish a claim under Title VII). While an employee can experience an adverse employment action if his workplace conditions subject him to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment— an alteration that can fairly be described as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet," *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir.2002), Drew has not shown that his working conditions objectively created a similar hardship.

AFFIRMED.